# IN THE COURT OF APPEALS OF TENNESSEE
## AT KNOXVILLE
May 14, 2014 Session

## ESTATE OF MARY LOU LAMB v. D. JIMMY BRINIAS, ET AL.

**Appeal from the Chancery Court for Knox County**
**No. M-07-169211      Michael W. Moyers, Chancellor**

---

**No. E2013-01550-COA-R3-CV-FILED-JULY 1, 2014**

---

The Estate of Mary Lou Lamb appeals a grant of summary judgment to defendant Ernest L. Joyner raising issues regarding whether the Chancery Court for Knox County ("the Trial Court") erred in finding that the plaintiff's response to the defendant's motion for summary judgment was filed untimely and therefore was not considered by the Trial Court, and whether the Trial Court erred in granting summary judgment on the issue of adverse possession. We find and hold: (1) that the Trial Court did not err in finding that the plaintiff's response was filed untimely; and (2) that Ernest L. Joyner failed to show that he was entitled to summary judgment as a matter of law. We vacate the grant of summary judgment on the issue of adverse possession and remand this case to the Trial Court for further proceedings.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Chancery Court Vacated Case Remanded**

D. MICHAEL SWINEY, J., delivered the opinion of the Court, in which CHARLES D. SUSANO, JR., C.J., and JOHN W. MCCLARTY, J., joined.

J. Nolan Sharbel, Knoxville, Tennessee, for the appellant, the Estate of Mary Lou Lamb.

Dudley W. Taylor, Knoxville, Tennessee, for the appellee, Ernest L. Joyner.

## OPINION

## Background

In 2007, Mary Lou Lamb ("Plaintiff") sued D. Jimmy Brinias, Tammy D., Brinias, Bill G. Williams, and Wanda S. Williams with regard to a boundary line dispute. Ms. Lamb later was granted permission to amend her complaint to add over a dozen additional defendants including Ernest L. Joyner ("Defendant"). Ms. Lamb died in April of 2011, and the Trial Court entered an agreed order substituting Ms. Lamb's estate[1] as the Plaintiff in this case[2].

Defendant filed a motion for summary judgment supported by his affidavit, among other things. After a hearing, the Trial Court entered an order on February 26, 2010 finding and holding, *inter alia*, that although Plaintiff's response to Defendant's motion was untimely and would not be considered, there was a genuine disputed issue of material fact with regard as to when Plaintiff "first had actual knowledge of the open and notorious possession of the disputed property by Joyner." The February 26, 2010 order denied summary judgment on the issue of adverse possession, but granted Defendant summary judgment on the claims that Defendant had caused damage to Plaintiff's property.

In January of 2013, Defendant filed a renewed motion for summary judgment supported by his affidavit and Plaintiff's responses to requests for admissions, among other things. In pertinent part, Defendant's affidavit stated:

> 2. My residence address is 6001 Hidden Brook Lane, Knoxville, Knox County, Tennessee 37938 (the "Residence"). I acquired title to this residential property through Warranty Deed dated February 18, 1997 and recorded February 24, 1997 in the Office of the Knox County Register of Deeds at deed book 2241, page 88. A copy of this Deed is attached as **Exhibit 1.**
>
> 3. The rear of my Residence adjoins the property of the Plaintiff. Plaintiff claims in this suit that my Residence as shown in the plat of record in the

---

[1]The Agreed Order of Substitution entered on May 18, 2011 actually states: "that Leonard Lamb, the named personal representative of the deceased Plaintiff, and Steve Lamb, heir of the deceased Plaintiff be and the same are substituted as parties Plaintiff in this cause."

[2]For simplicity, our references in this Opinion to Plaintiff refer either to Ms. Lamb or to Ms. Lamb's estate, as appropriate to the context of the sentence.

office of Register of Deeds for Knox County "overlaps and encroaches on Plaintiff's boundary."

4. On May 17, 1997, I was at the rear portion of my Residence cutting trees. Two other persons were with me, whose names are John Joyner and Steve Doyle.

5. On the above date of May 17, 1997, I became aware of a man yelling and indeed, screaming at me. He was close to the boundary line of my Residence, but just on the other side of a small stream which runs along a good portion of the boundary line.

6. I attempted to calm the man so that we could discuss whatever problem was causing him to be so upset. He informed [sic] that he was Red Lamb, the son of the owner of the land bordering my Residence. He further asserted quite angrily that my Residence boundary lines encroached on the property of his family.

7. I attempted to discuss the issue with this man, but his anger was such that it was difficult to have a reasonable conversation. At one point, I thought that he was going to assault me and I cautioned him that I would not allow that. I further learned during the course of this discussion that this man had removed pins placed in the boundary line as determined by the surveyor who platted the subdivision in which my Residence is located.

8. This man was too angry to allow for much in the way of rational discussion. However, he was quite clear in asserting his position that my Residence property line as shown in the recorded plat encroached on Plaintiff's property.

* * *

11. I took possession of my Residence property upon delivery to me of an executed warranty deed on February 18, 1997. I have openly and continuously maintained possession of this Residence property from and after that date.

12. My actions in occupying and possessing the Residence property included cutting trees as recited in paragraph 4 above. I also placed boundary line markers along the boundary of the property as described in my deed and the related recorded plat. I ran a string along this boundary line, with the string tied to the boundary markers. I also installed metal tee posts on the boundary

line, with affixed insulated wire constituting the above-ground part of an underground pet fence.

* * *

20. The statements made by me above with respect to Plaintiff's property includes that small portion of property constituting approximately 0.02 of an acre, which is here in dispute. Put another way, I have not excavated, built, buried pipe, pushed vast amount of dirt, filled with excess undercut dirt, placed drainage pipes, dumped backfilled dirt, debris and refuse, on even that part of my Residence property which Plaintiff claims and is here in dispute.

21. Plaintiff asserts in Section 15 of the Amended Complaint that I have "installed fencing, electronic wiring and devices on Plaintiff's property without Plaintiff's permission." I have not placed any fencing, electronic wiring and devices on Plaintiff's property.

22. Upon acquiring the Residence property, I ran a string along the property line, affixed to the boundary markers. The boundary markers with affixed string were placed on the property line as identified in my deed and the related subdivision plat recorded of record in the office of the Register of Deeds for Knox County, Tennessee.

23. I have now installed metal tee posts in the rear of my Residence, with a single insulated wire alone [sic] the top of the poles. This is the above-ground part of an underground pet fence. I placed this pet fence inside my Residence boundary line.

In response to Defendant's request for admissions, Plaintiff stated, in pertinent part:

4. On May 17, 1997, Defendant was at the rear portion of his Residence cutting trees.

RESPONSE:
Denied that Defendant Ernest L. Joyner was cutting trees and brush just at the rear of his residence, and that Defendant Ernest L. Joyner had actually moved to the rear of his property several hundred feet and crossed his property boundary onto Plaintiff's land and was cutting Plaintiff's tree(s).

-4-

5. Defendant was accompanied by two other persons while cutting trees as described in the next above Admission Request.

RESPONSE:
Denied. Plaintiff, after reasonable inquiry, is not able to recall any other persons being present at the meeting of May 17, 1997, except the Defendant Ernest L. Joyner, my father, Leonard C. Lamb, Jr., who was also known as "Red Lamb," and myself, Leonard C. Lamb, III.

6. On this date of May 17, 1997, Leonard C. Lamb, Jr., also known as Red Lamb (hereafter called "Red Lamb"), observed the Defendant cutting trees near the boundary line of his Residence.

RESPONSE:
Denied. Plaintiff with his father, Leonard C. Lamb, Jr., who was also known as "Red Lamb," observed the Defendant Ernest L. Joyner cutting tree(s) on the Lamb side of the common boundary by the Defendant Ernest L. Joyner.

7. On this date of May 17, 1997, Red Lamb became agitated over the fact of Defendant cutting trees near the boundary line of his Residence.

RESPONSE:
Admitted. Leonard C. Lamb, Jr., (now deceased) was agitated by Defendant Ernest L. Joyner cutting tree(s) on the Lamb property and demanded that the Defendant Ernest L. Joyner stop cutting tree(s) on the Lamb property and that Defendant Ernest L. Joyner remain on his side of the property boundary pointed out by Leonard C. Lamb, Jr.

8. Red Lamb asserted to Defendant that he must stop cutting trees.

RESPONSE:
Admitted. Leonard C. Lamb, Jr., (now deceased) asserted that the Defendant Ernest L. Joyner stop cutting tree(s) on the Lamb property the [sic] demanded that the Defendant Ernest L. Joyner remain on his (Joyner) side of the property boundary pointed out by Leonard C. Lamb, Jr.

9. Red Lamb further asserted at the time of this discussion that Defendant's Residence boundary lines encroached on Red Lamb's property.

RESPONSE:
Admitted. On May 17, 1997, a discussion ensued between Leonard C. Lamb, Jr., a/k/a "Red Lamb," (now deceased) and the Defendant Ernest L. Joyner during which Leonard C. Lamb, Jr., made the point that Leonard C. Lamb, Jr., had delivered the wooden engineering stakes located on the Lamb farm back to the land surveyor for the developer of Belle Air Plantation subdivision and had shown the land surveyor where the monuments for the Lamb farm and the Zuber farm were located to prevent an encroachment and overlap of boundary lines.

10. Red Lamb also informed Defendant at the time of this discussion that he had removed pins placed in the Residence boundary line as determined by the surveyor who platted the subdivision in which the Residence is located.

RESPONSE:
Denied. Leonard C. Lamb, Jr. did not acknowledged [sic] or removed [sic] any "set" land surveying monuments for the three (3) boundary lines laid out by the land surveyor for the developer of Belle Air Plantation Subdivision (Zuber Farm).

11. Red Lamb, now deceased, was the husband of Mary Lou Lamb, the original Plaintiff in this cause.

RESPONSE:
Admitted.

12. Red Lamb was accompanied by Leonard C. Lamb, III, also known as Buddy Lamb, at the time of this encounter on May 17, 1997.

RESPONSE:
Admitted.

13. Defendant took possession of his Residence property upon delivery to Defendant of an executed warranty deed on February 18, 1997.

RESPONSE:
Denied. The Defendant Ernest L. Joyner stated that he bought the vacant lot from the Developer; and further stated that he built the home on or about ten (10) years prior to his deposition on 10/31/2012. Therefore, there was not a residence on the vacant lot when purchased.

-6-

Admitted. That the aforesaid described warranty deed granted possession to the Defendant Ernest L. Joyner.

14. Defendant has openly and continuously maintained possession of this Residence property from and after that date.

RESPONSE:
Denied.

15. Defendant placed boundary line markers along the boundary of the Residence property as described in Defendant's deed and the related recorded plat.

RESPONSE:
Admitted in part and Denied in part. Defendant Ernest L. Joyner hired land surveyor Christopher L. Rudd to set iron pins using the erroneous recorded plat in Map Cabinet N, Slide 201-B in the Register's office of Knox County, Tennessee, on or about September 8, 2005, nine (9) months after the death of Leonard C. Lamb, Jr., without accounting for the land monuments pointed out to the Defendant Ernest L. Joyner by Leonard C. Lamb, Jr., Deceased, on or about May 17, 1997, at the meeting and discussion referenced in Requests 4, 5, 6, 7, 8, 9, 10, and 12.

16. Defendant also ran a string along this boundary line, with this string tied to the boundary markers.

RESPONSE:
Admitted in part and Denied in part. Defendant Ernest L. Joyner acknowledged his trespass on the Plaintiff's property by setting tee posts, a dog restraint system and accompanying wires, and string along his erroneous boundary line based on the land survey by Christopher L. Rudd, who failed to account for the land monuments described, identified, and pointed out by Leonard C. Lamb, Jr., Deceased, to Defendant Ernest L. Joyner on or about May 17, 1997, at the meeting and discussion referenced in Requests 4, 5, 6, 7, 8, 9, 10, and 12, said boundary markers being based on the erroneous plat with three (3) different boundary lines being used in the development process of Belle Air Plantation Subdivision, while completely ignoring the Lamb line and ownership.

-7-

17. Defendant also installed metal Tee posts on the boundary line; with affixed insulated wire, constituting the above-ground part of an underground pet fence.

RESPONSE:
Admitted in part and Denied in part. Plaintiff admits the discovery of a newly installed electronic device on Plaintiff's property in late 2007. Plaintiff is unable to admit or deny the intended use of such electronic device.

Plaintiff denies that Defendant Ernest L. Joyner's electronic device was installed on the tee posts exclusively, and that it was further attached to standing trees of the Plaintiff on Plaintiff's land.

18. In addition, Defendant cut trees along the Residence property boundary line when he was accosted by Red Lamb on may 17, 1997, as described in paragraphs 4 through 8, above.

RESPONSE:
Admitted in part and Denied in part. See Answers to Requests No. 4, 6, 7 and 8. Plaintiff admits trees were cut on Defendant Ernest L. Joyner and on Plaintiff's property by Defendant Joyner.

Plaintiff denies that Leonard C. Lamb accosted the Defendant Ernest L. Joyner on May 17, 1997, but approached the Defendant Ernest L. Joyner to discuss the Defendant's trespass and assure that it did not happen again, which further trespass did not occur until after the death of Leonard C. Lamb, Jr., on January 15, 2005.

The hearing on Defendant's renewed motion for summary judgment originally was set for February 6, 2013. This hearing was continued, and Defendant's renewed motion for summary judgment was heard on February 19, 2013. After the hearing the Trial Court entered its order on July 9, 2013 finding and holding, *inter alia*:

Thereupon, the Court made the following findings and conclusions:

1) January 4, 2013, Defendant Joyner filed a renewed Motion for Summary Judgment pursuant to TRCP 54;
2) February 6, 2013 was thereafter set as the hearing date for the renewed Motion for Summary Judgment;

3) January 31, 2013 filing of Plaintiff's TRCP 54.03 Responsive pleading, three (3) weekdays before the initial scheduled hearing date;

4) TRCP 56.03 requires that any "party opposing the motion for summary judgment must, not later that [sic] five days before the hearing, serve and file a response . . .";

5) Plaintiff's TRCP 56.03 responsive pleading was filed on Thursday, January 31, 2013 at 10:38 AM, and served on Defendants' counsel on or before Thursday, January 31, 2013 at 11:00 AM three (3) weekdays before the first scheduled hearing date of February 6, 2013, exclusive of Saturday and Sunday;

\* \* \*

8) Defendant counsel stated that there was an agreement now disputed by Plaintiff, between counsel to not waive the five (5) day response rule requirement of TRCP 56.03 based on the February 6, 2013 hearing date;

9) The hearing date was twice re-scheduled to February 12, and again to February 19, 2013 at 9:30 AM; and the actual hearing date for the renewed Motion for Summary Judgment was February 19, 2013;

10) The number of days that expired from the filing of Plaintiff's TRCP 56.03 response to the hearing date was eighteen (18) days without any further orders of the Court;

\* \* \*

12) Defendant Joyner is entitled to summary judgment as a result of the nonmovant's untimely response to Defendant Joyner's renewed motion for summary judgment pursuant to TRCP 56.03.

The Trial Court made the judgment final pursuant to Tenn. R. Civ. P. 54.02 as to Defendant. Plaintiff appeals the grant of summary judgment to Defendant.

### Discussion

Although not stated exactly as such, Plaintiff raises two issues on appeal: 1) whether the Trial Court erred in finding Plaintiff's response to Defendant's renewed motion for summary judgment was filed untimely; and, 2) whether the Trial Court erred in granting summary judgment to Defendant.

-9-

We first consider whether the Trial Court erred in finding Plaintiff's response to Defendant's renewed motion for summary judgment was filed untimely. Our review is *de novo* upon the record, accompanied by a presumption of correctness of the findings of fact of the trial court, unless the preponderance of the evidence is otherwise. Tenn. R. App. P. 13(d); *Bogan v. Bogan*, 60 S.W.3d 721, 727 (Tenn. 2001). A trial court's conclusions of law are subject to a *de novo* review with no presumption of correctness. *S. Constructors, Inc. v. Loudon County Bd. of Educ.*, 58 S.W.3d 706, 710 (Tenn. 2001).

Defendant's renewed motion for summary judgment was set initially for hearing on February 6, 2013. The hearing was re-set twice for different reasons. Defendant alleged that the parties' attorneys had an agreement that the hearing could be re-scheduled from February 6, 2013 to another date, but only as long as the allowed response time was calculated as if the hearing were held on the originally scheduled date. Plaintiff disputed the assertion that the parties had such an agreement regarding the response date.

The Trial Court held a hearing and heard evidence on the issue of whether or not the parties had an agreement with regard to the response time. The Trial Court was presented with the unpalatable task of making a decision in a "he said, she said," type of situation between two attorneys. In making this determination, the Trial Court was forced to make credibility determinations. We give a trial court's credibility determinations great weight on appeal. *Hughes v. Metro. Gov't of Nashville and Davidson County*, 340 S.W.3d 352, 360 (Tenn. 2011).

The Trial Court found that there was an agreement as argued by Defendant, and thus, that Plaintiff's response filed less than five days prior to the originally scheduled hearing on Defendant's renewed motion for summary judgment, yet again, was not filed timely. The evidence in the record on appeal does not preponderate against these findings, and we, therefore, find no error in the Trial Court's decision not to consider Plaintiff's untimely response.

This determination, however, does not end the inquiry. The Trial Court found and held that Defendant was "entitled to summary judgment as a result of [Plaintiff's] untimely response to Defendant Joyner's renewed motion for summary judgment pursuant to TRCP 56.03." In pertinent part, Tenn. R. Civ. P. 56.06 provides:

> When a motion for summary judgment is made and supported as provided in this rule, an adverse party may not rest upon the mere allegations or denials of the adverse party's pleading, but his or her response, by affidavits or as otherwise provided in this rule, must set forth specific facts showing that there

-10-

is a genuine issue for trial. If the adverse party does not so respond, summary judgment, if appropriate, shall be entered against the adverse party.

Tenn. R. Civ. P. 56.06.

We find no error in the Trial Court's determination that Plaintiff's untimely response to Defendant's renewed motion for summary judgment would not be considered. Rule 56.06, however, does not provide that a failure to respond properly automatically entitles the movant to summary judgment. Rather, Rule 56.06 provides that "[i]f the adverse party does not so respond, summary judgment, *if appropriate*, shall be entered against the adverse party." Tenn. R. Civ. P. 56.06 (emphasis added). We, thus, must consider whether summary judgment was appropriate, which leads to consideration of the second issue raised by Plaintiff, whether the Trial Court erred in granting summary judgment to Defendant

This suit was filed prior to July 2, 2011. As such, we apply the standard of review as reiterated by our Supreme Court as follows:

The scope of review of a grant of summary judgment is well established. Because our inquiry involves a question of law, no presumption of correctness attaches to the judgment, and our task is to review the record to determine whether the requirements of Rule 56 of the Tennessee Rules of Civil Procedure have been satisfied. *Hunter v. Brown*, 955 S.W.2d 49, 50-51 (Tenn. 1997); *Cowden v. Sovran Bank/Cent. S.*, 816 S.W.2d 741, 744 (Tenn. 1991).

A summary judgment may be granted only when there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. Tenn. R. Civ. P. 56.04; *Byrd v. Hall*, 847 S.W.2d 208, 214 (Tenn. 1993). The party seeking the summary judgment has the ultimate burden of persuasion "that there are no disputed, material facts creating a genuine issue for trial . . . and that he is entitled to judgment as a matter of law." *Id*. at 215. If that motion is properly supported, the burden to establish a genuine issue of material fact shifts to the non-moving party. In order to shift the burden, the movant must either affirmatively negate an essential element of the nonmovant's claim or demonstrate that the nonmoving party cannot establish an essential element of his case. *Id*. at 215 n.5; *Hannan v. Alltel Publ'g Co.*, 270 S.W.3d 1, 8-9 (Tenn. 2008). "[C]onclusory assertion[s]" are not sufficient to shift the burden to the non-moving party. *Byrd*, 847 S.W.2d at 215; *see also Blanchard v. Kellum*, 975 S.W.2d 522, 525 (Tenn. 1998). Our state does not apply the federal standard for summary judgment. The standard established in *McCarley v. West Quality Food Service*, 960 S.W.2d 585, 588 (Tenn. 1998),

-11-

sets out, in the words of one authority, "a reasonable, predictable summary judgment jurisprudence for our state." Judy M. Cornett, *The Legacy of Byrd v. Hall: Gossiping About Summary Judgment in Tennessee*, 69 Tenn. L. Rev. 175, 220 (2001).

Courts must view the evidence and all reasonable inferences therefrom in the light most favorable to the non-moving party. *Robinson v. Omer*, 952 S.W.2d 423, 426 (Tenn. 1997). A grant of summary judgment is appropriate only when the facts and the reasonable inferences from those facts would permit a reasonable person to reach only one conclusion. *Staples v. CBL & Assocs., Inc.*, 15 S.W.3d 83, 89 (Tenn. 2000). In making that assessment, this Court must discard all countervailing evidence. *Byrd*, 847 S.W.2d at 210-11. Recently, this Court confirmed these principles in *Hannan*.

*Giggers v. Memphis Housing Authority*, 277 S.W.3d 359, 363-64 (Tenn. 2009).

Defendant moved for summary judgment claiming that he adversely possessed the real property at issue in this case pursuant to Tenn. Code Ann. § 28-2-101, which, in pertinent part, vests title in an adverse possessor who holds the real property by "conveyance, devise, grant, or other assurance of title, purporting to convey an estate in fee, . . ." after seven years of adverse possession. Tenn. Code Ann. § 28-2-101 (2000).

As our Supreme Court has instructed:

In order to establish adverse possession under [the common law] theory, or in any statutorily based claim, the possession must have been exclusive, actual, adverse, continuous, open, and notorious for the requisite period of time. *Hightower v. Pendergrass*, 662 S.W.2d 932, 935 n.2 (Tenn. 1983); *cf. Menefee v. Davidson County*, 195 Tenn. 547, 260 S.W.2d 283, 285 (Tenn. 1953). Adverse possession is, of course, a question of fact. *Wilson v. Price*, 195 S.W.3d 661, 666 (Tenn. Ct. App. 2005). The burden of proof is on the individual claiming ownership by adverse possession and the quality of the evidence must be clear and convincing. *O'Brien v. Waggoner*, 20 Tenn. App. 145, 96 S.W.2d 170, 176 (Tenn. Ct. App. 1936). The actual owner must either have knowledge of the adverse possession, or the possession must be so open and notorious to imply a presumption of that fact. *Kirkman v. Brown*, 93 Tenn. 476, 27 S.W. 709, 710 (Tenn. 1894).

*Cumulus Broad., Inc. v. Shim*, 226 S.W.3d 366, 377 (Tenn. 2007). "[T]he law is well settled that inclosure is unnecessary to establish actual possession where such inclosure is

impracticable, but possession may be established by such use and occupation as the land, from its situation, nature, and character, admits." *Bensdorff v. Uihlein*, 177 S.W. 481, 482 (Tenn. 1915).

In support of his assertion that he met the requirements for proving adverse possession, Defendant relies heavily upon the conversation that occurred on May 17, 1997, and the fact that Plaintiff admitted in responses to Defendant's requests for admissions that this conversation occurred. A careful and thorough review of Plaintiff's responses, however, shows that while Plaintiff admitted that a conversation occurred, this admission does not support the assertion made by Defendant.

What Plaintiff admitted is that a conversation occurred when Leonard C. Lamb, Jr. discovered Defendant allegedly trespassing upon land owned by Plaintiff and cutting some trees. Plaintiff's response to Defendant's requests for admissions shows that Leonard C. Lamb, Jr. informed Defendant of the trespass and requested that Defendant cease trespassing. Plaintiff's responses also state that "further trespass did not occur until after the death of Leonard C. Lamb, Jr., on January 15, 2005." The May 17, 1997 conversation as described in Defendant's affidavit and Plaintiff's responses to Defendant's request for admissions hardly shows exclusive possession of the disputed property by Defendant even on May 17, 1997 as both Mr. Lamb and Defendant were on the property claiming ownership.

A single instance of trespass and cutting a tree or a few trees is insufficient by itself to prove Defendant's adverse possession claim. As this Court has explained: "Occasional use of land through cultivation, cutting grass or timber or the grazing of stock is not sufficient to establish adverse possession." *Cusick v. Cutshaw*, 237 S.W.2d 563, 567 (Tenn. Ct. App. 1948). *See also Quarles v. Smith*, No. W2009-00514-COA-R3-CV, 2010 Tenn. App. LEXIS 136, at *13 (Tenn. Ct. App. Feb. 24, 2010) (quoting other cases wherein it was stated: "[o]ccasional grazing and cultivation are insufficient to establish adverse possession[,]" and "occasional use of land by cutting trees, no matter how long, will not *alone* constitute adverse possession." (citations omitted) (emphasis in original)), *no appl. perm. appeal filed*.

In his affidavit in support of his renewed motion for summary judgment, Defendant also claims that he placed boundary line markers and ran a string along the boundary line when he acquired his property. Defendant, however, does not state exactly where he placed these boundary markers, whether these markers were placed in the area Defendant claims to have adversely possessed, what type of markers these were, how visible they were, how long they were in place, and whether Plaintiff did, or should have had, notice of the existence of these markers. In short, Defendant's bare assertion that he placed

-13-

boundary markers with string also is insufficient, without further proof, to prove adverse possession.

Finally, Defendant asserts that he installed metal tee posts with insulated wire as part of an underground pet fence. Defendant, however, does not provide any time period whatsoever as to when he installed these metal tee posts. In fact, in his affidavit, he states that he "now installed metal tee posts . . . ," which, when read in a light most favorable to the non-moving party, as we must at this summary judgment stage, implies that the metal tee posts were placed recently, not seven years before inception of this suit. Furthermore, as with the assertions about the boundary markers and string, Defendant provides no further details about the metal tee posts that would show that placement of them was sufficient to put Plaintiff on notice that Defendant was adversely possessing the property at issue.

Summary judgment was not appropriate in this case because "the facts and the reasonable inferences from those facts" do not permit "a reasonable person to reach only one conclusion." *Giggers*, 277 S.W.3d at 364. Defendant has not shown at this summary judgment stage that he is entitled to judgment as a matter of law as he has not established every required element of adverse possession. Defendant has not shown that the acts he alleges were sufficient given the "situation, nature, and character, . . ." of the real property at issue. *Bensdorff*, 177 S.W. at 482. Nor has Defendant shown by clear and convincing evidence that he adversely possessed the property at issue for the required time period, that Plaintiff had knowledge of the alleged possession, or should have had such knowledge, and that Defendant's alleged possession was "exclusive, actual, adverse, continuous, open, and notorious . . . ." *Cumulus Broad., Inc.*, 226 S.W.3d at 377. Given all this, we find and hold that Defendant was not entitled to summary judgment. We, therefore, reverse the grant of summary judgment to Defendant and remand this case for further proceedings.

## Conclusion

The judgment of the Trial Court is vacated, and this cause is remanded to the Trial Court for further proceedings consistent with this Opinion and for collection of the costs below. The costs on appeal are assessed against the appellee, Ernest L. Joyner.

_____
D. MICHAEL SWINEY, JUDGE