O'BRIEN v. WAGGONER et al.—96 S. W. (2d) 170.

Middle Section.   March 14, 1936.

Petition for Certiorari denied by Supreme Court, July 3, 1936.

Chas. H. Rutherford, of Nashville, and A. L. Dorsey, of Springfield, for appellant.

Hardin H. Conn, of Springfield, for appellee.

FAW, P. J.   Jake A. O'Brien, as administrator of the estate of Mrs. Perry Rebecca Ransom, deceased, brought this suit in the chancery court of Robertson county on October 1, 1932, against Clarence C. Waggoner, executor of the will of Mrs. Eva Graham, deceased. U. S. Fidelity & Guaranty Company, surety on the bond of said Waggoner as executor, and the American Telephone & Telegraph Company. The latter two defendants are foreign corporations, but with agents and representatives in this state.

Complainant's intestate, who is described in complainant's bill as Mrs. Perry Rebecca Ransom, is sometimes known in the record as Mrs. Rebecca Douglas Ransom, and at other times as Mrs. Rebecca (Perry) Ransom, and again as Mrs. Perry Ransom. Unless otherwise indicated, references in this opinion to Mrs. Ransom will be intended as referring to complainant's intestate.

Mrs. Eva Graham, deceased, the testatrix of defendant Waggoner, was a daughter of Mrs. Ransom.

Mrs. Ransom died intestate in Robertson county, Tenn., on July 19, 1921, and complainant, O'Brien, was appointed and qualified by and in the county court of Robertson county as the administrator

of her estate on September 14, 1931—more than ten years after her death. Mrs. Eva Graham died in Robertson county, Tenn., in the month of February, 1931, leaving a will, in and by which she nominated defendant Waggoner (a citizen and resident of Davidson county, Tenn.) as executor thereof, and said will was probated in Robertson county, Tenn., and defendant Waggoner qualified as executor thereof on March 2, 1931, with defendant U. S. Fidelity & Guaranty Company as the surety on his bond as such executor.

Mrs. Ransom and Mrs. Graham were both widows for a period of several years before the death of Mrs. Ransom, and during this period they lived together in the village of Greenbrier in Robertson county. Mrs. Ransom was "Postmaster" at Greenbrier, but she could neither read nor write, and Mrs. Graham transacted much of Mrs. Ransom's business for her. Mrs. Ransom also received a pension as the widow of a federal soldier.

Mrs. Ransom had two sons, viz., Ellis Ransom and Edward Ransom, both of whom died prior to the death of their mother. Ellis Ransom had one child, a son, Perry, and Edward had one child, a daughter, Gladys, both of whom are living, and Gladys is now Mrs. Gladys McCallie.

Upon the death of each of Mrs. Ransom's sons she collected the proceeds of some life insurance policies payable to her and invested a part of the sums thus collected in stock of the defendant American Telephone & Telegraph Company.

Mrs. Ransom purchased and owned stock of the defendant American Telephone & Telegraph Company, of the par value of $100 per share, for which she held certificates as follows: (1) One certificate bearing date of December 12, 1911, for 13 shares, issued to her in the name of Mrs. Rebecca Douglas Ransom; (2) one certificate bearing date of December 3, 1917, for five shares, issued to her in the name of Mrs. Perry Ransom; and (3) one certificate (date not shown in the record) for 9 shares, issued to her in the name of Mrs. Perry Ransom.

Defendant Waggoner was a personal friend of Mrs. Ransom and Mrs. Graham, from his childhood, as long as they lived, and, as Mrs. Ransom "had no place she thought safe enough" for these stock certificates, she requested defendant Waggoner to keep them for her, and he placed them in his lockbox in a bank at Nashville, where they remained until this suit was brought and, so far as the record shows, until the present time.

It is conceded by defendant Waggoner that he held these stock certificates as a gratuitous bailee until his qualification as executor of the will of Mrs. Graham, but he insists that after the death of Mrs. Ransom he held them as such bailee for Mrs. Graham until her death, and that, since Mrs. Graham's death, they are a part

of the assets of her estate in his possession for administration as executor.

On the other hand, plaintiff contends that the stock represented by said certificates belonged to his intestate at the time of her death and now constitutes assets of her estate. In his bill he alleged that defendant Waggoner, by his conduct in retaining possession of said stock certificates and in refusing to surrender and deliver same to complainant, and in collecting and receiving all dividends paid thereon, has unlawfully and wrongfully converted and appropriated the same as assets of the estate of Mrs. Eva Graham, and that defendant Waggoner, as executor of said estate, together with his said surety, is liable to complainant as administrator of the estate of Mrs. Ransom for the value of said stock, together with all dividends which have been paid thereon and collected by him as such executor, and that complainant is therefore entitled to recover a judgment against defendant Waggoner, executor, etc., and the said surety on his bond, for the full value of all of said stock evidenced by said stock certificates, together with all dividends paid thereon and collected by him. Complainant prayed for judgment against the defendants in accordance with these allegations of the bill.

But in his answer to the bill defendant Waggoner, executor, etc., stated, among other things, that, ''as he still has said stock in his possession, and can and will deliver same to whomsoever the Court should decree, he submits that complainant is not in any event entitled to a judgment or decree against him, or his official surety, no matter to whom the Court might decree that the stock certificates belong.''

After the aforesaid answer of defendant Waggoner was filed, the complainant, by leave of the court, amended his bill by adding thereto an alternative prayer that complainant ''be awarded said property in specie, and that a judgment be rendered and pronounced in favor of complainant and against said defendants for damages for the unlawful and wrongful detention of said stock certificates, and for the amount of all dividends collected by said defendant, Clarence C. Waggoner, executor, since the death of the said Mrs. Eva Graham, deceased, with interest thereon from the date said dividends were collected by him, and all costs of this cause.''

The case was heard by the chancellor upon pleadings and proofs, according to the forms of a court of equity, and a decree was pronounced and entered which contains the chancellor's findings of facts and law, and which findings are directly responsive to the material issues made by the pleadings; hence we see no occasion to extend this opinion by a statement of the contents of the pleadings, further than such references as may be made to same in

the disposition of appellant's assignments of error hereinafter. The aforesaid final decree of the chancellor is as follows:

"This cause came on to be further and finally heard on this the 18th day of August, 1934, before the Honorable J. W. Stout, Chancellor, upon all of the pleadings and exhibits thereto, the testimony of witnesses and exhibits thereto and the orders of the Court heretofore made and entered in this cause, and the entire record in the cause; from all of which it appears to the Court that Mrs. Perry Rebecca Ransom, complainant's intestate, was at the time of her death the owner of 27 shares of stock in the defendant, American Telephone and Telegraph Company, which are specifically set out and described in the pleadings and exhibits thereto. She had several years prior to her death delivered the certificates, representing said shares of stock, to the defendant, Clarence C. Waggoner, as her personal friend for safe keeping by him as her custodian or bailee, and all of said certificates of stock were in his custody and possession at the time of her death, he holding the same for her as her agent or bailee.

"It further appears that Mrs. Eva Graham, daughter of the said Mrs. Perry Rebecca Ransom, had lived with her mother for a number of years prior to her death, and that some years before the death of Mrs. Ransom, there was an agreement between her and her said daughter, Mrs. Eva Graham, that after Mrs. Ransom's death her daughter, Mrs. Graham, would be entitled to receive and collect dividends on said stock so long as she lived and in that manner be entitled to receive the income on said shares of stock during her lifetime. That pursuant to said agreement the dividend checks issued on said stock were received, endorsed, cashed and collected by the said Mrs. Eva Graham up until the time of her death, during all of which time the said certificates representing said shares of stock remained in the custody and possession of the defendant, Clarence C. Waggoner, under the original bailment by the said Mrs. Perry Rebecca Ransom, said Waggoner continuing to hold and keep in his possession said certificates as the agent or bailee of Mrs. Ransom. During all of that time, that is from the death of Mrs. Ransom until the death of Mrs. Graham, said certificates of stock were held by him and the dividends thereon collected by Mrs. Graham under and pursuant to the terms of the agreement between Mrs. Ransom and her said daughter, so there was no change of either the ownership, or the possession of these certificates representing said shares of stock, and the said Mrs. Eva Graham did not at any time hold or attempt to hold the same adversely to the ownership of her mother, the said Mrs. Ransom, or adversely to the rights or interests of her personal representatives or her distributees; and from the entire record in the cause it appears to the

Court that there was no element of adverse holding in the collection by Mrs. Graham of the dividends on said stock during her lifetime.

"It further appears to the Court that at the time the defendant, Clarence C. Waggoner, qualified as executor of the estate of Mrs. Eva Graham said certificates of stock were in his possession as the agent or custodian of Mrs. Perry Rebecca Ransom, and that said shares of stock did not constitute assets of the estate of the said Mrs. Eva Graham, and that he had no right or interest therein as executor of her estate. That when the complainant, Jake A. O'Brien, qualified as administrator of the estate of Mrs. Perry Rebecca Ransom, he, as her personal representative, was entitled to receive said certificates of stock, representing said 27 shares of stock in the American Telephone and Telegraph Company, as they constituted assets of the estate of his intestate and the same should have been surrendered and delivered by the defendant, Clarence C. Waggoner, to the complainant at that time, the complainant having made formal demand on the defendant, for the delivery of said shares of stock. That the complainant as the personal representative of the said Mrs. Ransom is, therefore, entitled to recover all of said shares of stock as assets of her estate, together with all dividends which have been collected thereon by the defendant, since the death of the said Mrs. Eva Graham, with interest. The Court finds all of the issues in favor of the complainant and against the defendant and adjudges that the complainant is entitled to the relief sought by his original bill in this cause and the amendment thereto in accordance with the prayers contained therein.

"The Court further finds, holds and decrees that Mrs. Eva Graham never had possession of said telephone stock, never claimed the same adversely to the estate of Mrs. Perry Rebecca Ransom, and that the statutes of three years and five years pleaded by the defendant are not availing as a defense.

"It is, therefore, ordered, adjudged and decreed by the Court that the said 27 shares of stock held by the said Mrs. Perry Rebecca Ransom in the defendant, American Telephone & Telegraph Company set out and described in the pleadings and exhibits and evidenced by one certificate, bearing the serial No. F114428, representing 13 shares of stock of the par value of $100.00 each, bearing date of December 12, 1911, issued to and in the name of Mrs. Rebecca Douglas Ransom; one certificate, bearing the serial No. P36F69, representing 5 shares of the stock of the par value of $100.00 each, issued under date of December 3, 1917, and in the name of Mrs. Perry Ransom; one certificate, bearing the serial No. P37768, representing nine shares of stock of the par value of $100.00 each, issued under date of December 12, 1917, and in the name of

Mrs. Perry Ransom, were and are the property of the said Mrs. Perry Rebecca Ransom and now constitute assets of her estate; that said stock was never given by the said Mrs. Perry Rebecca Ransom to her daughter, Mrs. Eva Graham, and the latter never had possession of the same and never claimed or asserted any rights or interests therein antagonistic or adverse to the ownership of her mother, the said Mrs. Ransom, so as to affect or change the ownership of her mother's estate therein, but was merely collecting and receiving the income on said stock during her lifetime in accordance with the agreement between her and her mother. That the complainant is, therefore, entitled to recover said stock from the defendant.

"It is, therefore, ordered, adjudged and decreed by the Court that the complainant, Jake A. O'Brien, administrator of the estate of the said Mrs. Perry Rebecca Ransom, have and recover of the defendant, Clarence C. Waggoner, executor of the estate of Mrs. Eva Graham and the defendant, United States Fidelity and Guaranty Co., surety on his bond, the sum of $3,055.86, the present market value of said shares of stock as shown by quotations of said stock, for which judgment is hereby rendered, but this judgment for the value of said stock may be satisfied by a surrender and delivery from the defendant to said complainant of said certificates representing said shares of stock, which he now has in his possession, within 30 days from this date and which he is hereby ordered to deliver to the complainant immediately.

"It further appearing to the Court that the defendant, Clarence C. Waggoner, as executor of the estate of Mrs. Eva Graham, has received and collected dividends on said stock to the amount of $425.25 since he qualified as her personal representative; it is, therefore, further ordered, adjudged and decreed by the Court that the complainant, Jake A. O'Brien, administrator of the estate of Mrs. Perry Rebecca Ransom, have and recover of the defendant, Clarence C. Waggoner, executor of the estate of Mrs. Eva Graham, deceased, and the defendant, United States Fidelity & Guaranty Company, surety on his bond, the said sum of $425.25, with interest thereon from the date the same was collected by said defendants, and the said defendant, American Telephone & Telegraph Co., is hereby ordered and directed to pay to the complainant, Jake A. O'Brien, administrator of the estate of the said Mrs. Perry Rebecca Ransom, all dividends which have accrued on said stock since the last dividend thereon was paid to said defendants, and which are now in its hands, and that it continue to pay said dividends accruing on said stock to the complainant as long as he retains the ownership thereof and until the same is sold by him and transferred on the books of the Company.

"It is further ordered, adjudged and decreed by the Court that the complainant, Jake A. O'Brien, administrator of the estate of Mrs. Perry Rebecca Ransom, have and recover of the defendant, Clarence C. Waggoner, executor of the estate of Mrs. Eva Graham, deceased, and the defendant United States Fidelity & Guaranty Company, surety on his bond, all the costs of this cause and all other sums adjudged in favor of the complainant and against said defendant, as hereinabove stated, for all of which execution will issue.

"To all of which the defendant, Clarence C. Waggoner, executor as aforesaid, excepted, and now excepts, and from all of which he prays an appeal to the next term of the Court of Appeals of Tennessee, at Nashville, which is granted, provided he, within thirty days herefrom, to-wit, from August 18, 1934, file bond for appeal as provided by law, and for good cause shown to the Court he is allowed such thirty days within which to file such bond and prepare and file his bill of exceptions."

The defendant Waggoner, executor, etc., perfected his appeal and assigned errors. The appellant's assignment of errors (with citations to record omitted) are as follows:

"1. The Chancellor erred in finding that an agreement was entered into by and between Mrs. Perry Rebecca Ransom and her daughter, Mrs. Eva Graham, under and by which Mrs. Graham was to. and did hold said telephone stock for and during her lifetime and receive the dividends or profits therefrom and at her death to go to the estate of the said Mrs. Ransom, for no such agreement is shown by the testimony in this cause as required by law.

"2. The Chancellor erred in finding that an agreement was entered into by and between Mrs. Ransom and Mrs. Graham under which the latter was to receive the income from said telephone stock for life and at her death such stock was to go to the estate of the said Mrs. Ransom, and rendering judgment for the appellee, for all such testimony as was adduced by the complainant and appellee. administrator of Mrs. Ransom, tended to show that the stock was to be held by Mrs. Graham for life and she receive the income therefrom, and at her death it was to go to Perry Ransom who is not a party complainant or party at all in this suit, and if there was an enforceable agreement that the stock was to go to him, he had a right of action direct, and no administrator was necessary, but, on the other hand, an administrator would have no right to sue.

"3. The Chancellor erred in refusing to find and hold that Mrs. Ransom gave this stock to Mrs. Graham, and in adjudging that Mrs. Ransom's administrator is entitled to the same, and in giving judgment against appellant, because the weight of the evidence is that Mrs. Ransom did give this stock to Mrs. Graham absolutely.

"4. The Chancellor erred in holding and decreeing that the holding of this stock by C. C. Waggoner after Mrs. Ransom's death was under a bailment created by Mrs. Ransom for herself, and that Mrs. Graham did not have possession of same as a matter of law, and that she never claimed the same adversely, and that, therefore, the plea of the three-year statute of limitations and the five-year statute of repose, or bar, were not availing, because, there is no evidence that the said Waggoner held said stock under said original bailment of Mrs. Ransom, but the uncontradicted evidence is that after Mrs. Ransom's death he held the same as custodian only for Mrs. Graham and in law that would be her holding, and she did claim the same adversely and as her absolute property, and exercised complete dominion and control over the same, and the whole tenor of the evidence is to that effect."

After a careful scrutiny of the pleadings and evidence, we find that the proof sustains the chancellor's findings of facts, and we concur therein. It is, in substance, admitted in the answer of defendant Waggoner that the certificates in question were issued to complainant's intestate in her lifetime, and the stock they represented was her property at that time and for an indefinite period of time thereafter; but he claims (1) that Mrs. Ransom, during her lifetime, gave the stock to Mrs. Graham, and (2) that Mrs. Graham acquired title thereto by adverse possession after the death of Mrs. Ransom.

"The burden of proving that a gift was made, including the elements necessary to its validity, is on the donee." 12 R. C. L., p. 971.

A gift inter vivos must be "clearly made out." The question "resolves itself into one of intention," and "it must appear absolutely and beyond a doubt that the donor intended to part with his dominion over the property." Sheegog v. Perkins, 4 Baxt., 273. To same effect see Balling v. Manhattan Sav. Bank & Trust Co., 110 Tenn., 288, 295, 75 S. W., 1051; Shugart v. Shugart, 111 Tenn., 179, 184, 76 S. W., 821, 102 Am. St. Rep., 777; Atchley v. Rimmer, 148 Tenn., 303, 319, 255 S. W., 366, 30 A. L. R., 1481; Williams v. Thornton, 160 Tenn., 229, 232, 22 S. W. (2d), 1041.

"Delivery and intention to give must accompany each other to make a valid gift." Atchley v. Rimmer, supra, 148 Tenn., 303, at page 319, 255 S. W., 366, 30 A. L. R., 1481; Scholze v. Scholze, 2 Tenn. App., 80, 95; 12 R. C. L., p. 932.

"An absolute gift which will divest the donor's title, requires a complete renunciation on his part, and acquisition on the part of the donee, of all the title to and interest in the subject of the gift." Marshall v. Russell, 93 Tenn., 261, 266, 25 S. W., 1070, 1071; Chandler v. Roddy, 163 Tenn., 338, 350, 43 S. W. (2d), 397.

If there is a doubt about the matter, "that doubt must prevail against the hypothesis of a gift." Sheegog v. Perkins, supra; Balling v. Manhattan Sav. Bank & Trust Co., supra; Chandler v. Roddy, supra.

Weighed by the rules declared in the above-cited cases, the evidence in the instant case falls far short of disclosing the elements necessary to the validity of a gift inter vivos, viz., intention to give, accompanied by delivery.

Defendant Waggoner alleges in his answer that he is claiming to hold said stock certificates as the property of the estate of his said testatrix, both on account of gift, delivery, and transfer of said stock to said Eva Graham in the lifetime of Mrs. Ransom, and on account of eleven years' adverse possession of said property, during which interested persons in the estate of Mrs. Ransom had knowledge of and acquiesced in the gift and delivery of said stock by Mrs. Ransom to her daughter Mrs. Graham, and that more than three years have elapsed since said gift and delivery to Mrs. Graham, and defendant pleads and relies upon the statute of limitations of three years in favor of a party in possession of personal property.

The statute to which defendant Waggoner thus refers is section 4470 of Shannon's Code (section 8598 of the Code of 1932), which provides that "actions for injuries to personal or real property; actions for the detention or conversion of personal property [shall be commenced] within three years from the accruing of the cause of action."

In the case of Turner v. Turner, 2 Sneed, 27, 31, wherein the party in possession of personal property relied upon the above-quoted statute, the court said:

"Since the case of Kegler v. Miles, in Mart. & Y. 426 [17 Am Dec. 819], it has been uniformly held in this State, that adverse possesion under a claim of right for the time prescribed by the act of limitations, does not only bar the right to the possession and the remedy, but the title of the true owner, which is vested in the adverse possessor, and gives him a perfect title, as in the case of land under the first section of the act of 1819. The statute will not run at all, unless there be adverse possession. To constitute adverse possession, it must be accompanied with a claim of right to the property. It requires then both the holding, or occupation of the property, and an intent fully developed by words, or actions, to claim it against the true owner, to render the possession adverse. Ang. on Lim., 413.

"In this case, Mrs. Turner never pretended to be the owner of the slave, but only claimed the use of it for life—always admitting the title to be in Sumpter.

"Her claim then, instead of being hostile to his, was in friendship and subordination to it. Surely it never could be held, that an estate for years, or for life, could be created by the operation of the statute, upon a permissive possession, against the owner of the fee."

The burden of proving adverse possession is upon him who pleads and relies upon it, and every presumption is in favor of the true owner. Buchanan v. Nixon, 163 Tenn., 364, 369, 43 S. W. (2d), 380, 80 A. L. R., 151; Tubb v. Williams, 7 Humph., 367, 371; Blakemore v. Matthews, 154 Tenn., 334, 341, 285 S. W. 567.

One who relies upon the statute must show the character of his possession by "clear and positive testimony." Southern Coal & Iron Co. v. Schwoon, 145 Tenn., 191, 246, 239 S. W., 398. It is not sufficient that he had the possession long enough to create a title under the statute. He must show that he held and claimed adversely to the former owner. Prince v. Broach, 5 Sneed, 318, 320.

The law presumes that one who acquires possession of personal property to hold in subordination to the title of the true owner continues to hold in the same right; and, to displace this presumption, the fact must be affirmatively proved, by clear and convincing evidence, not merely that he held possession for himself and adversely to the true owner, for the length of time required to give title by the statute, but, in addition, that the true owner had full knowledge of such adverse claim and holding during all that period of time. Elliott v. Holder, 3 Head, 698, 700.

It appears from the record in the case at bar, and is undisputed, that the name of the owner of the stock in question has never been changed on the books of the American Telephone & Telegraph Company since the certificates were issued to Mrs. Ransom; that the certificates have been in the custody of defendant Waggoner since they were placed there by Mrs. Ransom as aforesaid; that Mrs. Ransom could not write and, during her lifetime, her name was indorsed on all dividend checks by Mrs. Graham; and that, after Mrs. Ransom's death, Mrs. Graham continued to collect dividend checks by indorsing the name of Mrs. Ransom thereon in the same manner as theretofore.

It appears from the greater weight of the proof, in our opinion, that it was the wish of Mrs. Ransom that, after her death, Mrs. Graham should have the dividends on the stock in question so long as Mrs. Graham should live; that Mrs. Graham understood that such was her mother's wish, and that they had an agreement to that effect; that those who stood in the relation of next of kin of Mrs. Ransom knew of this understanding and were willing to respect Mrs. Ransom's wishes. It is immaterial to the result in this case whether Mrs. Ransom wished, or intended, that said stock should

go to her "estate" at the death of Mrs. Graham, or to her grandson Perry Ransom, the son of Ellis Ransom (as the stock had been bought, in part at least, with money obtained from insurance on the life of Ellis Ransom).

The material fact is that Mrs. Graham claimed nothing more than the right to the dividends on the stock so long as she lived, and the persons adversely interested had no notice of any claim by her that she was the absolute owner of the stock.

The possession of personalty by the life tenant is in perfect harmony with the rights of the remaindermen, and is incapable in law of becoming adverse to their rights. Woodson v. Smith, 1 Head, 276.

It is argued for appellee that, until the appointment of an administrator of the estate of Mrs. Ransom, there was no one against whom Mrs. Graham could hold said stock adversely. Thurman v. Shelton, 10 Yerg. 383, 387; Jones v. Read, 1 Humph., 335, 346. On the other hand, it is argued for appellant that, after the lapse of seven years from the death of Mrs. Ransom (Shannon's Code, section 4483; Code 1932, section 8610; William's Ann. Code, section 8610), the distributees of her estate could have maintained an action to recover the assets of the estate without the intervention of an administrator (Hurt v. Fisher, 96 Tenn., 570, 35 S. W., 1085), and therefore the statute of limitations was set in motion and the action was barred before the appointment of the appellee as administrator. But it is unnecessary to decide this question in view of our finding that Mrs. Graham did not claim the stock in question adversely to the other distributees of the estate of Mrs. Ransom, beyond the right to appropriate the dividends to her own use during her lifetime. Turner v. Turner, supra, 2 Sneed, 27, at page 31.

Appellant Waggoner seeks to rely on section 7834 of the Code (Shan. Code, section 3152), which provides: "Possession of goods and chattels continued for five years, without demand made and pursued by due process of law, shall, as to the creditors of the possessor or purchasers from him, be deemed conclusive evidence that the absolute property is in such possessor, unless the contrary appear by bill of sale, deed, will, or other instrument in writing, proved or acknowledged and registered."

This is not a statute of limitations, but is codified as a part of the article containing the statutes for the "prevention of frauds and perjuries." This statute was not specially pleaded by the defendant below. It was not mentioned in his pleadings.

However, if it had been pleaded, it would not have been available to the defendant in this case. It was enacted for the benefit of creditors of the possessor of goods and chattels or purchasers from the possessor, and not for the benefit of the possessor. If defend-

ant Waggoner has any title to the stock in question, he derived it through the will of his testatrix (in which will this stock was not mentioned), and in that respect he stands on no higher ground than his testatrix, who was (if this statute were applicable) the "possessor."

Upon a consideration of the entire record, we are of the opinion that the assignments of error are not well made, and they are overruled. The decree of the chancery court is affirmed, and a decree will be entered accordingly. The cause will be remanded to the chancery court of Robertson county for the execution of the decree according to its terms.

The costs of the appeal will be adjudged against the appellant and the surety on his appeal bond.

Crownover and DeWitt, JJ., concur.