IN THE COURT OF APPEALS OF TENNESSEE
AT NASHVILLE
Assigned on Briefs April 1, 2019

## DUANE SOUTHERLAND, ET AL. v. DANNY HOWELL

**Appeal from the Chancery Court for Van Buren County**
**No. 1371      Larry B. Stanley, Jr., Chancellor**

_____

### No. M2018-01427-COA-R3-CV

_____

This appeal arises from a boundary line dispute.  Duane and Jean Southerland ("Plaintiffs") sued Danny M. Howell ("Defendant") in the Chancery Court for Van Buren County ("the Trial Court") seeking declaratory judgment as to a boundary line and damages for the removal of a fence.  The Trial Court found that Plaintiffs successfully established their claim of adverse possession over the disputed area.  Defendant timely appealed to this Court.  Defendant argues, among other things, that Plaintiffs cannot prevail because they did not own or adversely possess the property for a period of 20 years.  We, as did the Trial Court, hold that, in keeping with Tennessee law, the requisite time period may be established by successive possessions.  The unrefuted proof at trial was that Plaintiffs and their predecessors in title maintained actual, continuous, and exclusive possession of the disputed area for over 20 years.  We affirm the judgment of the Trial Court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Chancery Court Affirmed;**
**Case Remanded**

D. MICHAEL SWINEY, C.J., delivered the opinion of the court, in which FRANK G. CLEMENT, JR., P.J., M.S., and KENNY W. ARMSTRONG, J., joined.

Danny M. Howell, pro se appellant.

Thomas K. Austin, Dunlap, Tennessee, for the appellees, Duane Southerland and Jean Southerland.

## OPINION

## Background

In September 2017, Plaintiffs sued Defendant in the Trial Court seeking declaratory judgment that they are the owners of two disputed areas and damages for the removal of a fence. Plaintiffs alleged, in part:

8. The Southerland property boarders [sic] Defendant's property along the Defendant's eastern border.
9. The Southerlands own various types of livestock, including cows and horses that they run on the Southerland Property.
10. Plaintiffs purchased the Southerland Property in December 2013. At that time there was a fence located on or near the boundary line which separated the Plaintiffs' Property from the Defendant's Property. This fence met or exceeded the livestock requirements set forth in Tenn. Code Ann. 44-8-102.
11. Plaintiffs' property boarders Defendant's property along the Defendant's eastern border.
12. The aforementioned fence served as a boundary line between the Plaintiffs' Property and the Defendant's property since 2000.
13. Sometime in November 2016, Defendant destroyed the aforementioned fence without providing any notice to Plaintiffs. This was done in violation of Tenn. Code Ann. 44-8-208 and Tenn. Code Ann. 44-8-209.
14. After Defendant removed the fence, he painted a new boundary line east of the fence line. By painting the new line, Defendant attempted to unlawfully claim approximately 3 acres of the Plaintiffs' Property (the three (3) acres is hereinafter referred to as the "Disputed Area"). A survey of the area in dispute is attached hereto as "Exhibit C"
15. Approximately 1.7 acres of the Disputed Area is owned by the Plaintiffs pursuant to Plaintiff's warranty deed that is recorded in the Van Buren County's Register of Deed's Office.
16. Approximately 1.3 acres of the Disputed area is owned by the Plaintiff's via adverse possession.

Defendant, acting pro se, filed an answer. Plaintiffs later filed a motion for partial judgment on the pleadings, stating in part:

The southern most disputed area, a 1.329 acre tract, "Southern Area" has been the known boundary area for over 20 years. The Plaintiffs purchased the property in 2013 and based on the understanding from their

predecessors in title, have always maintained that they were the owners of the Southern area. Thus, the Plaintiffs have acquired the property by adverse possession.

The northern most disputed area, a 1.741 acre tract, hereinafter referred to as "Northern Area" was acquired by them and Plaintiffs have always maintained that they are the owners. The Northern Area only became in dispute after the Defendant repainted the area sometime in late 2016. According to Defendant's Answer, filed on September 22, 2017, he used a "compass and tape" to measure and change the property line.

In March 2018, the Trial Court entered an order declaring Plaintiffs owners of the northern disputed area but reserving judgment on the southern disputed area as well as the issue of damages. The Trial Court stated, in part:

That the northern most disputed area, hereinafter called "Northern Are" and shown to be 1.741 acres more or less, according to a survey by Allen Maples Land Surveying and submitted to the Court at this hearing, shall be declared the Petitioners' property. They are declared the true and rightful owners of the 1.741 acre tract known as the "Northern Area". The Respondent admitted that he repainted the new line and got his measurements using a compass and tape and could have gotten it wrong.

In regards to the area described as the southern most disputed area, also known as the "Southern Area", the ruling in regards to this property shall be reserved and heard at a final hearing.

Further, in regards to the damages from the removal of the fence shall also be reserved for a final hearing.

In June 2018, this matter was tried as to the "Southern Area." The record does not contain a transcript of the trial. However, the Trial Court approved a Statement of the Evidence prepared by Plaintiffs. According to the Statement of the Evidence, Plaintiffs called Ricky Hennessee ("Hennessee") to the stand. Hennessee is the predecessor in title to Plaintiffs' property. Hennessee acquired the property at auction in 1994. Upon acquiring the property, Hennessee discovered a yellow-painted boundary line that extended to the western end of the disputed area. Hennessee painted the line red, fenced in the area with barbed wire, and farmed cattle on the land. Hennessee testified that he maintained open and exclusive control of the entire area until he conveyed the property to Plaintiffs in 2013. Before selling the property, Hennessee showed Duane Southerland the red boundary line.

Picking up where Hennessee left off, Plaintiffs began farming the land. Duane Southerland testified that he, too, maintained actual and exclusive control of this disputed

area. These were the only two witnesses to testify. For his part, Defendant neither called any witnesses nor testified himself. According to the Statement of the Evidence, Defendant did not cross-examine Plaintiffs' witnesses, make any objections to any question asked by Plaintiffs' attorney, or make an opening statement or closing argument. Plaintiffs' case thus went unrefuted.

In July 2018, the Trial Court entered an order finding that Plaintiffs had successfully established adverse possession over the disputed Southern Area. The Trial Court stated, as relevant:

5. The Southern Disputed Area borders the Plaintiffs' western border and the Defendant's eastern border.

6. In 1994, Ricky Hennessee, Plaintiffs predecessor in title, acquired what is now known as the Southerland Property through a public auction.

7. Upon acquiring the Southerland Property, Henessee found a boundary line surrounding the entire Southerland Property that was painted in yellow paint. The yellow painted line extended to the western border of the disputed property.

8. Soon after acquiring the property in 1994, Ricky Hennessee, painted over the yellow boundary line with red paint to make the boundary of the Southerland property more visible.

9. After acquiring the Southerland Property, Hennessee cleared the Southerland Property to the red painted boundary line. He cleared the land with a bulldozer to create more pasture area for cattle.

10. After clearing the land, Hennessee fenced the Southerland property. This fence fell on the western border of the Disputed Area. The fence consisted of three strands of barbed-wire and he used tee-posts and the trees with red-paint on them to support the barbed-wire fence.

11. That after Hennessee fenced the Southerland Property, he farmed cattle on the land and kept the area east of the red painted boundary area in good condition. He continued his use of this property until he conveyed the property to Plaintiffs, Duane and Jean Southerland, in December 2013.

12. That upon acquiring the Southerland Property from the Hennessee's, Plaintiffs continued to use the Southern Disputed Area of the property by farming cattle. The boundary line fence was in good condition after the Southerlands acquired the property from the Hennessee's.

13. The Plaintiffs have clearly established that the boundary line falls along what is referred to as the "Red Painted Line" in the Allen Maples Survey which is attached hereto as "Exhibit A".

14. That Plaintiffs established that there was an adverse taking of the Southern Disputed Boundary area by the Southerlands' predecessors in title

-4-

that occurred before the Hennessee's acquired the Southerland Property in 1994.

15. That the Southerlands and their predecessors in title have held exclusive, actual, adverse, continuous, open and notorious possession of the southern disputed area since, at least, 1994. That such taking was so open and notorious that a reasonable owner of the Howell Property would have had notice to it.

Defendant timely appealed to this Court. In January 2019, the Trial Court entered its final judgment dismissing any claims, counterclaims or pending matters not previously addressed. This appeal now is properly before us.

## **Discussion**

Although not stated exactly as such, Defendant raises one issue on appeal: whether the Trial Court erred in finding that Plaintiffs established adverse possession.

Our Supreme Court has explained in detail the doctrine of adverse possession, as well as the doctrine's policy justifications, as follows:

The doctrine of adverse possession is often described as a limitation on the recovery of real property; the limitation period may operate not only as a bar to recover adversely possessed property but it may also vest the adverse holder with title. Ralph E. Boyer, *Survey of the Law of Property* 233, 236 (3d ed.1981). Generally, acquisition by adverse possession for the requisite period of time, whether statutory or under common law, must be (a) actual and exclusive; (b) open, visible, and notorious; (c) continuous and peaceable; and (d) hostile and adverse. *Id.* The adverse possession of real estate is not only inconsistent with the right of the title holder but may, when all elements of the doctrine are present, create an actual ownership interest. 10 *Thompson on Real Property* § 87.01, at 73-74 (David A. Thomas ed., 1994).

Historically, there are several policy reasons used to justify adverse possession, such as: (1) the stabilization of uncertain boundaries through the passage of time; (2) a respect for the apparent ownership of the adverse possessor who transfers his interest; and (3) assurance of the long-term productivity of the land. Title by either possession or prescription are old subjects in the English Law, according to one treatise, with counterparts in the Roman Law. Boyer, *Survey of the Law of Property* 764; *see Taylor ex dem. Atkyns v. Hord,* 1 Burr. 60, 97 Eng. Rep. 190 (K.B.1757); *see also*

*Freeman v. Martin Robowash, Inc.*, 61 Tenn.App. 677, 457 S.W.2d 606, 609-10 (Tenn. Ct. App. 1970).

***

In our state, common law adverse possession rests upon the proposition "that, where one has remained in uninterrupted and continuous possession of land for 20 years, a grant or deed will be presumed." *Ferguson v. Prince*, 136 Tenn. 543, 190 S.W. 548, 552 (Tenn. 1916); *see also Webb v. Harris*, 44 Tenn. App. 492, 315 S.W.2d 274, 277 (Tenn. Ct. App. 1958). Color (or assurance) of title is not required. *Keel v. Sutton*, 142 Tenn. 341, 219 S.W. 351, 352-53 (Tenn. 1920); *Hallmark v. Tidwell*, 849 S.W.2d 787, 792-93 (Tenn. Ct. App. 1992). In order to establish adverse possession under this theory, or in any statutorily based claim, the possession must have been exclusive, actual, adverse, continuous, open, and notorious for the requisite period of time. *Hightower v. Pendergrass*, 662 S.W.2d 932, 935 n. 2 (Tenn. 1983); *cf. Menefee v. Davidson County*, 195 Tenn. 547, 260 S.W.2d 283, 285 (Tenn. 1953). Adverse possession is, of course, a question of fact. *Wilson v. Price*, 195 S.W.3d 661, 666 (Tenn. Ct. App. 2005). The burden of proof is on the individual claiming ownership by adverse possession and the quality of the evidence must be clear and convincing. *O'Brien v. Waggoner*, 20 Tenn. App. 145, 96 S.W.2d 170, 176 (Tenn. Ct. App. 1936). The actual owner must either have knowledge of the adverse possession, or the possession must be so open and notorious to imply a presumption of that fact. *Kirkman v. Brown*, 93 Tenn. 476, 27 S.W. 709, 710 (Tenn. 1894). When an adverse possessor holds the land for a period of twenty years, even absent any assurance or color of title, the title vests in that possessor. *Cooke v. Smith*, 721 S.W.2d 251, 255-56 (Tenn. Ct. App. 1986).

 Successive possessions, or tacking, may be utilized to establish the requisite period of years if there is no hiatus. *Ferguson*, 190 S.W. at 552; *Catlett v. Whaley*, 731 S.W.2d 544, 545-46 (Tenn. Ct. App. 1987). . . .
*Cumulus Broad., Inc. v. Shim*, 226 S.W.3d 366, 375-77 (Tenn. 2007) (footnote omitted).

Throughout his brief, Defendant argues that adverse possession is a form of stealing and that he is a victim of a land grab. We respectfully disagree with Defendant's characterization of adverse possession. Whatever one may think of the policy justifications behind adverse possession, the fact remains it is a longstanding doctrine in Tennessee law.

-6-

Beyond his argument that adverse possession is illegitimate, Defendant states that the doctrine cannot apply here because neither Plaintiffs nor Hennessee owned the property for a period of 20 continuous years. However, successive possessions may be utilized to establish the requisite period of time. The unrefuted evidence from trial is that the disputed Southern Area—the area at issue on appeal—was controlled openly and exclusively first by Hennessee and then by Plaintiffs for over 20 continuous years without interruption.

Defendant's failure to mount any kind of defense at trial has severely hampered his case. As only Plaintiffs presented any evidence to the Trial Court, it is unsurprising that the evidence does not preponderate against any of the Trial Court's findings. Defendant's passionate arguments are not a substitute for evidence. As this Court has discussed regarding what evidence is and what it is not:

> Allegations in the pleadings are not evidence of the facts averred. *Hillhaven Corp. v. State ex rel. Manor Care, Inc.*, 565 S.W.2d 210, 212 (Tenn. 1978). "Unless such facts are admitted or stipulated, they must be proved by documents, affidavits, oral testimony or other competent evidence." *Id*. Furthermore, "mere statements of counsel are not evidence or a substitute for testimony." *Metro. Gov't of Nashville & Davidson Co. v. Shacklett*, 554 S.W.2d 601, 605 (Tenn. 1977). . . . Witnesses are required to take an oath or affirmation before testifying, Tenn. R. Evid. 603, and in the absence of stipulations, findings of fact must come from the evidence introduced.

*In re D.M.H.*, No. W2006-00270-COA-R3-JV, 2006 WL 3216306, at *7 (Tenn. Ct. App. Nov. 8, 2006), *no appl. perm. appeal filed*.

The Trial Court found that "the Southerlands and their predecessors in title have held exclusive, actual, adverse, continuous, open and notorious possession of the southern disputed area since, at least, 1994" and that "such taking was so open and notorious that a reasonable owner of the Howell Property would have had notice to it." We have no basis to disturb the Trial Court's findings, based as they are on the unrefuted evidence at trial. This unrefuted evidence of adverse possession amounts to clear and convincing evidence. The judgment of the Trial Court is affirmed.

## Conclusion

The judgment of the Trial Court is affirmed, and this cause is remanded to the Trial Court for collections of the costs below. The costs on appeal are assessed against the Appellant, Danny M. Howell, and his surety, if any.

_____
D. MICHAEL SWINEY, CHIEF JUDGE