IN THE COURT OF APPEALS OF TENNESSEE
AT KNOXVILLE
January 14, 2025 Session

## BILLY RAY BLANKENSHIP v. TKY ACQUISITIONS, LLC

Appeal from the Chancery Court for Campbell County
No. 7CH1-2022-CV-201   Elizabeth C. Asbury, Chancellor

———————————————————

## No. E2023-01817-COA-R3-CV

———————————————————

This appeal seeks possession and ownership of real property based on claims of adverse possession. The trial court ruled in favor of the appellee. We affirm the decision of the trial court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Chancery Court Affirmed; Case Remanded**

JOHN W. MCCLARTY, J., delivered the opinion of the court, in which W. NEAL MCBRAYER and KRISTI M. DAVIS, JJ., joined.

J. Stephen Hurst, LaFollette, Tennessee, for the appellant, Billy Ray Blankenship.

Wesley D. Stone, Knoxville, Tennessee, for the appellee, TKY Acquisitions, LLC.

## OPINION

## I. BACKGROUND

TKY Acquisitions, LLC ("TKY") and its predecessors in title have owned the property now in dispute ("Subject Property") since as early as 1922. The company introduced its chain of title during these proceedings. No evidence existed that someone other than TKY and its predecessors in title claimed ownership of the Subject Property. Although never in his chain of title, Billy Ray Blankenship's father added the description of the Subject Property in a deed to his son dated and recorded in 2010. However, both before 2010 and after 2010, TKY paid property taxes on the Subject Property. TKY offered clear and convincing proof of payment of property taxes by it and its predecessors in title regarding the Subject Property from at least 1999 through 2022.

In 2020, TKY began the process of bidding out a portion of the Subject Property for sale to fund a pension fund for teachers.[1] The boundary was marked for the sale with pink tape and blue paint; two years later, in 2022, loggers began logging a portion of the Subject Property pursuant to the contract they had entered with TKY. Thereafter, Mr. Blankenship asserted that he owned the Subject Property. It was at this time that TKY learned of Mr. Blankenship's ownership claim. Upon TKY stating that it would not stop the logging operation, Mr. Blankenship filed the instant lawsuit and obtained a temporary restraining order against TKY.

Mr. Blankenship alleged that he owned the disputed property pursuant to the following exclusive bases: by title, and pursuant to Tennessee Code Annotated sections 28-2-101 (Seven-year adverse possession statute under color of title), 28-2-102 (Seven-year statute barring claims), 28-2-103 (Extent of Possession), 28-2-109 (Presumption upon payment of taxes), 28-2-110 (Effect of nonpayment of taxes), and 28-2-105 (Thirty-year statute and the twenty-year common law adverse possession). Regarding ownership by title, Mr. Blankenship relied upon the 2010 instrument from his father. In his complaint and at trial, Mr. Blankenship **did** **not** assert that he owned the Subject Property pursuant to common law adverse possession.

Mr. Blankenship argued that his use of the property was consistent with its mountainous character. He testified that he cleared trails and rode ATVs on the Subject Property, raised crops on it, maintained livestock on it, hunted on it, posted it, ran hunters off of it, allowed others to hunt on it, logged it, cut right-of-ways in it, and ran Larry Hicks off of it when Mr. Hicks attempted to log it. He asserted that his family picnicked, camped, and played on the disputed tract. Mr. Blankenship testified during the February 2023 hearing that the property has "always been in my family and nobody's ever said, well, we own it until now." Despite testifying that he "posted [the subject] property," Mr. Blankenship's attorney confirmed that there were no pre-February 2023 photographs reflecting Mr. Blankenship's asserted postings.

During the February 2023 hearing, Mr. Blankenship's surveyor agreed that TKY held title to the Subject Property because the description of the tract added to Mr. Blankenship's 2010 deed was not in his chain of title. Heather Quinn-Bader, a title attorney who prepared a title opinion regarding the tract, opined that the records in the Register of Deeds Office for Campbell County did not reflect any "deed which relates to this 63 acres that went into any of the Blankenships" and that she could not "see any deed by which they ever got title to that piece." She further testified that she could not "see anything that would justify that . . . parcel being included on [Mr. Blankenship's 2010 deed]."

---

[1] TKY is a limited liability company run by American Timberland Fund to manage timber for purposes of funding state teachers' pension funds.

Patrick Slone, co-owner of IRTEC, Incorporated, an engineering consulting firm that first began working on the Subject Property in 1998, testified extensively during the February 2023 hearing. Mr. Slone, who does land surveying, first became involved with the Subject Property when Begley Lumber Company ("Begley") owned it. After he surveyed it for Begley, the Subject Property was sold to TKY. He noted that his involvement with the property included doing research, locating different areas, placing iron pins, locating monuments identified in deeds, and marking those monuments. During his visit to the Subject Property, Mr. Slone never encountered anyone who told him that they owned it, never saw signage or fencing that would give him or anybody at IRTEC any indication that someone other than TKY owned the disputed property, and never saw any remnants of someone growing corn or raising hogs on the Subject Property. Mr. Slone never observed any "no trespassing" signs up and down Whistle Creek Road, never saw evidence of mowing any portion of the Subject Property, and never saw any roads Mr. Blankenship claimed he built.

Mr. Slone further testified that Mr. Blankenship's father did not include the tract of land the father owned that adjoined the Subject Property in the 2010 deed. He contended, therefore, that Mr. Blankenship is not a title owner to real property adjoining the Subject Property owned by TKY. In this regard, Ms. Quinn-Bader's testimony is in accord with Mr. Slone's testimony.

Danny Smith, a forester with F&W Forestry ("F&W") began managing TKY's property in 2002 and conducted property line maintenance, timber inventory, and hunting lease administration. During his years of management, Mr. Smith would "go out on the ground and meet [people] if it was a new [hunting] lease." He observed that during those twelve years, none of the hunters had ever complained to him that someone had ordered them off the Subject Property. He noted that he drove by it "several times per week." His services required him to be physically on the property, to flag it, to mark trees by paint, and to GPS the property in preparation for the timber sale.

According to Mr. Smith, when he is in the field, he occasionally speaks to landowners if there is a problem. Prior to the logging incident, Mr. Smith stated that he had never had any face-to-face communications with Mr. Blankenship. When Mr. Smith approached Mr. Blankenship after the logging commenced to inform him that TKY would not cease the operation, Mr. Blankenship did not tell him that he had been keeping hunters off the Subject Property or that he was leasing it to hunters. According to Mr. Smith, Mr. Blankenship never told him to get off the Subject Property.

Mr. Smith testified that prior to TKY's timber sale in 2021, no one had been on TKY's land clearing roads, flagging, or posting the property. There were no fences on the Subject Property when Mr. Smith was preparing it for the timber sale. Had he observed any of these things, he would have contacted his supervisor, Rick Sluss, and then investigated further. He noted that between November 3, 2020, when he began the process

of preparing the timber sale, a portion of which was in the disputed area, and August 23, 2022, he and a co-worker were on the Subject Property not less than fourteen times, either preparing it for sale, showing the timber to be sold, closing the sale, or conducting audits and inspections.

At the conclusion of the February 2023 hearing, the trial court concluded that "it's clear that TKY has title to the property." Thereafter, in August 2023, a second hearing was held related to Mr. Blankenship's statutory adverse possession claims.

Rick Sluss, a consulting forester for over 30 years, works as the regional manager for F & W; he became familiar with the Subject Property in 1998 when it was owned by Begley. Mr. Sluss began providing forestry consulting to TKY in December 1999. When hired to conduct an inventory of the Subject Property, Mr. Sluss and another forester under his employ physically walked the land. Mr. Sluss noted that upon becoming involved with the property, he "pretty much ha[s] [Danny Smith] on "that property" every week."

Mr. Sluss testified that no one using the Subject Property had indicated or claimed ownership. While physically on the property, he did not see signs being posted by others. He observed no evidence that anyone other than TKY claimed ownership of the Subject Property. During Mr. Sluss's involvement with the disputed property, he noted that neither he nor any of his employees: (1) "witnessed anyone farming on the disputed tract," (2) witnessed anyone other than Bob Muse[2] logging the disputed tract, (3) "observed or [was] made aware of people cutting firewood" on the disputed tract, (4) observed where anyone was "camping on the disputed property," (5) observed where anyone was "hunting on the disputed property without TKY's permission," (6) observed anyone "walking around on the disputed property," (7) observed anyone "putting fences on the property prior to the filing of this lawsuit," or (8) observed "posting signs all around this property, including up and down Whistle Creek Road." When setting up the timber sale in 2021, his forester went out "into the field and [ ] GPS'd, flagged and painted the exterior boundary of the timber sale." He noted that if he and the other foresters noticed any signs, they would have "taken a pause to figure out what was going on . . . ."

Brandi Breland, an asset manager for both BTG Actual and TKY as well as a fiduciary for TKY, testified that as part of her duties for both companies, she is involved with record keeping and overseeing all contracts, including those relating to hunting leases. A mapping system and GPS information is used to define boundaries for hunting leases on TKY's property. In addition, Mrs. Breland's duties include bidding out timber for logging to both manage timber density and generate revenue for the teachers' pension fund. Prior

_____

[2] Mr. Sluss recalled that in 2001, he was involved in a lawsuit filed by TKY against Bob Muse involving a portion of the Subject Property. Mr. Muse and others trespassed upon TKY's property in three different areas, including a portion of the disputed property. Mr. Muse's practice was to "set up an adjoining landowner and then just roam around [TKY's] property stealing trees." Apparently, Mr. Muse used Mr. Blankenship's property as an adjoining landowner to TKY.

- 4 -

to Mr. Blankenship's lawsuit, Mrs. Breland had been to the Subject Property. She testified that from the time she began working with TKY through the date of the filing of the lawsuit, there was no indication to her that anyone other than TKY owned the Subject Property. Mrs. Breland engaged Mr. Sluss to set up the timber sale, which included placing the sale out for bid to loggers, meeting with prospective buyers, and entertaining and accepting offers for the timber. Once the timber sale contract was awarded, Mrs. Breland executed the contract. Due to both the lawsuit and the temporary restraining order issued by the trial court, Mrs. Breland was required to issue a refund of $107,852.36 on the timber sale contract.

As he testified previously at the February hearing, Danny Smith, a forester for F & W from 2002 until 2022, was never made aware of (1) anybody farming or mowing on the Subject Property, (2) logging on the Subject Property, (3) cutting firewood on the Subject Property (4) hunting on the Subject Property other than those people that had leases with TKY, or (5) any signs on the property "prior to this lawsuit."[3] Further, none of the members or contacts of the hunting clubs came to Mr. Smith and indicated that they were having problems with someone claiming ownership of the Subject Property. Prior to Mr. Blankenship's lawsuit, Mr. Smith observed no fencing on the Subject Property. After Mr. Blankenship filed his lawsuit, Mr. Smith and Jacob Gordon placed signs for TKY over signs someone had placed after the lawsuit was filed. Regarding the 2021 timber sale, Mr. Smith recalled that he first went around the property and both flagged it and GPS'd it. He began preparing the property for sale on November 3, 2020, by walking on it and flagging its boundary with pink flags and blue paint. During his identification of the boundary, he did not see any evidence of someone other than TKY asserting ownership of the Subject Property. Mr. Smith related that he would have notified Mr. Sluss if he had observed someone claiming ownership and said "we've got a problem." He recalled taking two different prospective buyers/logging companies to the timber sale property and, at that time, did not see evidence of anyone claiming ownership of it.

The trial court made comprehensive findings. It concluded that Mr. Blankenship's theory of adverse possession pursuant to Tennessee Code Annotated section 28-2-101 failed because "there was no proof that his predecessors had a grant by the State of Tennessee or the State of North Carolina as statutorily required." As to the theory of ownership pursuant to Tennessee Code Annotated sections 28-2-102 and 28-2-103, the trial court concluded that these statutes can only be used defensively and therefore the claims failed. As to the contentions pursuant to Tennessee Code Annotated sections 28-2-109 and 28-2-110 requiring proof by Mr. Blankenship that he and his predecessors paid property taxes on the disputed property for more than twenty years, the trial court concluded that "[n]o proof was submitted by Mr. Blankenship that he or his predecessors had paid real property taxes on the property in dispute . . ." for the required period of time. Addressing the final statutory claim, Tennessee Code Annotated section 28-2-105, the trial court

---

[3] Signs described at trial were installed by Mr. Blankenship after February 27, 2023.

determined that Mr. Blankenship did not establish that his 2010 instrument had been recorded in the Campbell County Register of Deeds Office for the required thirty-year period.

Despite Mr. Blankenship not asserting in his complaint ownership through common law adverse possession, the trial court, "[i]n an effort to be thorough," analyzed the facts presented at trial pursuant to this doctrine. It concluded that Mr. Blankenship "failed to prove by clear and convincing evidence all of the requisite requirements for adverse possession." The court determined that Mr. Blankenship's claim of adverse possession was not continuous or open. The court thereafter dismissed the lawsuit. Mr. Blankenship timely appealed the trial court's decision.

## II. ISSUES

Mr. Blankenship made an "ASSIGNMENT OF ERROR" in his brief:

Trial Court erred when it failed to apply the appropriate standard for adverse and continuous use of mountainous property by the Appellant, which would afford him a grant of title after twenty (20) years.

We restate TKY's response as follows:

A. By asserting for the first time on appeal that he owned the Subject Property pursuant to the common law adverse possession doctrine, Mr. Blankenship waived this issue for this court's consideration.

B. The trial court correctly determined that Mr. Blankenship did not prove by clear and convincing evidence that he acquired title to TKY's real property by adverse possession when it specifically found that he did not prove that his asserted possession was open or continuous.

    a. Statutory Adverse Possession and Waiver

    b. Common Law Adverse Possession, Waiver, and Credibility of Witnesses

## III. STANDARD OF REVIEW

As we observed in *Logan v. Cannon*, 602 S.W.3d 363, 378 (Tenn. Ct. App. 2019):

Our review of the trial court's judgment following a non-jury trial is *de novo*

upon the record, with a presumption of correctness as to the trial court's findings of fact unless the preponderance of the evidence is otherwise. *See* Tenn. R. App. P. 13(d); *Rogers v. Louisville Land Co.*, 367 S.W.3d 196, 204 (Tenn. 2012). "In order for the evidence to preponderate against the trial court's findings of fact, the evidence must support another finding of fact with greater convincing effect." *Wood v. Starko*, 197 S.W.3d 255, 257 (Tenn. Ct. App. 2006) (citing *Rawlings v. John Hancock Mut. Life Ins. Co.*, 78 S.W.3d 291, 296 (Tenn. Ct. App. 2001)). The trial court's determinations regarding witness credibility are entitled to great weight on appeal and shall not be disturbed absent clear and convincing evidence to the contrary. *See Morrison v. Allen*, 338 S.W.3d 417, 426 (Tenn. 2011); *Jones v. Garrett*, 92 S.W.3d 835, 838 (Tenn. 2002). We review the trial court's conclusions of law *de novo* with no presumption of correctness. *Hughes v. Metro. Gov't of Nashville & Davidson Cnty.*, 340 S.W.3d 352, 360 (Tenn. 2011).

## IV. DISCUSSION

"Generally, acquisition by adverse possession for the requisite period of time, **whether statutory or under common law**, must be (a) actual and exclusive; (b) open, visible, and notorious; (c) continuous and peaceable; and (d) hostile and adverse." *Cumulus Broad., Inc. v. Shim*, 226 S.W.3d 366, 376-79 (Tenn. 2007) (emphasis added). "The burden of proof falls on the individual claiming ownership by adverse possession and the quality of the evidence must be clear and convincing." *Id.* (citing *O'Brien v. Waggoner*, 20 Tenn. App. 145, 96 S.W.2d 170, 176 (Tenn. Ct. App. 1936)). "The actual owner must either have knowledge of the adverse possession, or the possession must be so open and notorious to imply a presumption of that fact." *Id.* (citing *Kirkman v. Brown*, 93 Tenn. 476, 27 S.W. 709, 710 (Tenn. 1894)).

### a. Statutory Adverse Possession

Mr. Blankenship asserts that the trial court erred when it determined that his adverse possession claims pursuant to Tennessee Code Annotated sections 28-2-101, 28-2-102, 28-2-103, and 28-2-105 "do not apply" and finding that his usage of the property was sporadic and not continuous and open.

By sworn complaint, Mr. Blankenship first asserted he acquired the disputed property by adverse possession pursuant to Tennessee Code Annotated section 28-2-101. The statute provides as follows:

(a) Any person having had, either personally or through those through whom that person's claim arises, individually or through whom a person claims,

seven (7) years' adverse possession of any lands, tenements, or hereditaments, granted by this state or the state of North Carolina, holding by conveyance, devise, grant, or other assurance of title, purporting to convey an estate in fee, without any claim by action at law or in equity commenced within that time and effectually prosecuted against such person is vested with a good and indefeasible title in fee to the land described in such person's assurance of title.

(b) No title shall be vested by virtue of such adverse possession, unless such conveyance, devise, grant, or other assurance of title shall have been recorded in the register's office for the county or counties in which the land lies during the full term of such seven (7) years' adverse possession.

Tenn. Code Ann. § 28-2-101. At trial, however, Mr. Blankenship neither presented clear and positive proof nor argued that he or anyone in his chain of title received title to the disputed property from the State of Tennessee or the State of North Carolina. Accordingly, the trial court correctly concluded that he failed to meet the requirements of the statute.

Tennessee Code Annotated section 28-2-102 states as follows:

Any person, and those claiming under such person neglecting for the term of seven (7) years to avail themselves of the benefit of any title, legal or equitable, by action at law or in equity, effectually prosecuted against the person in possession, under recorded assurance of title, as in § 28-2-101, are forever barred.

Tenn. Code Ann. § 28-2-102. Tennessee Code Annotated section 28-2-103 provides:

(a) No person or anyone claiming under such person shall have any action, either at law or in equity, for the recovery of any lands, tenements or hereditaments, but within seven (7) years after the right of action accrued.

(b) No possession of lands, tenements or hereditaments shall be deemed to extend beyond the actual possession of an adverse holder until the muniment of title, if any, under which such adverse holder claims such lands, tenements or hereditaments is duly recorded in the county in which the lands are located.

Tenn. Code Ann. § 28-2-103. As to those statutes, the trial court correctly determined that sections 28-2-102 and 28-2-103 may only be used defensively; thus, these statutes cannot provide Mr. Blankenship as plaintiff statutory adverse possession. *See Cumulus Broad., Inc.*, 226 S.W.3d at 376.

As to Mr. Blankenship's claim pursuant to Tennessee Code Annotated section 28-

2-105, the statute provides as follows:

> Any person holding any real estate or land of any kind or any legal or
> equitable interest therein, and such person and those through whom such
> person claims having been in adverse possession of same for seven (7) years,
> where the real estate is held and claimed by such person or those through
> whom such person claims by a conveyance, devise, grant, a decree of a court
> of record, or other assurance of title purporting to convey an estate in fee,
> and such conveyance, devise, grant, or other assurance of title, has been
> recorded in the register's office of the county in which the land lies for a
> period of thirty (30) years or more or such decree entered on the minutes of
> such court for a period of thirty (30) years or more, is vested with an absolute
> and indefeasible title to such real estate or interest therein.

Tenn. Code Ann. § 28-2-105. The trial court concluded that Mr. Blankenship's purported
assurance of title did not provide him "assurance of title for thirty (30) years" or more,
because the instrument he relied upon is dated in 2010. Mr. Blankenship had no
predecessors in title relating to the disputed tract because his "chain of purported title" to
the Subject Property begins only with him. Thus, the trial court correctly determined that
this claim lacked merit.

Tennessee Code Annotated section 28-2-110 provides that a purported adverse
possessor is "barred from bringing any action in law or in equity to recover the same . . ."
if the person fails to "pay any state and county taxes thereon for a period of more than
twenty (20) years. . . ." Tenn. Code Ann. § 28-2-110(a). As noted by the trial court, Mr.
Blankenship failed to present proof of payment of property taxes relating to the property
in dispute. In this appeal, he concedes this finding when he states that he "did not rely on
the payment of taxes for twenty (20) years as same was noted as contested in the Trustees
(sic) office." Therefore, his claims under 28-2-109 and 28-2-110 were correctly found by
the trial court to fail.

Mr. Blankenship cannot show that the evidence of record supports another finding
of fact with greater convincing effect. Accordingly, we affirm the trial court's decisions
regarding the statutory adverse possession theories.

**b. Common Law Adverse Possession, Waiver, and Credibility of Witnesses**

Mr. Blankenship contends that the "[t]rial Court erred when it failed to apply the
appropriate standard for adverse and continuous use of mountainous property by the
Appellant, which would afford him a grant of title after twenty (20) years." By this
argument, Mr. Blankenship relies upon adverse possession under common law. TKY
asserts that Mr. Blankenship waived consideration of this theory when he failed to raise it

in his complaint, failed to present it or argue it at trial, and failed to include it in his required Statement of Issues in his brief. According to TKY, "issues not raised in the trial court cannot be raised for the first time on appeal." *Simpson v. Frontier Cmty. Credit Union*, 810 S.W.2d 147, 153 (Tenn. 1991) (citing *Lovell v. Metropolitan Government*, 696 S.W.2d 2 (Tenn. 1985)).

As the trial court raised and considered the issue, we will address it. When examining the evidence, the court determined that for at least more than twenty years prior to this lawsuit, Mr. Sluss, Mr. Smith, and Mr. Slone were on the Subject Property, granting hunting leases, conducting timber inventories, and locating "monuments, corners, and gather[ing] information for preparation of a survey." At no time during this period did Mr. Sluss, Mr. Smith, or Mr. Slone see "activity as described by Mr. Blankenship." They saw no evidence of farming activity, logging except as previously referenced by Mr. Muse, cutting of firewood, hunters without leases from TKY, camping, fencing, or signs posted in the area." They did not "see anyone claiming ownership."

The trial court concluded that any alleged use by Mr. Blankenship amounted to nothing more than a series of occasional and sporadic trespasses which cannot constitute adverse possession and did not rise to the level of clear and convincing evidence as being actual, exclusive, open, visible, and notorious, continuous, peaceable, hostile, and adverse. *See Coal & Iron Co. v. Coppinger*, 95 Tenn. 526, 530, 32 S.W. 465, 466 (1895). Caselaw in this state has long provided that "'[m]ere acts of trespass do not constitute actual possession. 'The act of a casual trespasser who enters upon land for a temporary purpose, as for example, to hunt or fish, is not an act of possession, because it is lacking in the purpose to seize and hold. . . .'") (quoting *Round Mountain Lumber & Coal Co. v. Bass*, 13 6 Tenn. 687, 700, 191 S.W. 341 (1916)). Instead, "the owner must have knowledge of the adverse claim, or it must be so open and notorious as that he will be presumed to have noticed it." *Id.* (citing *Kirkman v. Brown*, 93 Tenn. 476, 477, 27 S.W. 709, 709 (1893)). The trial court did not find the testimony supporting Mr. Blankenship's claim more credible than TKY's testimony in opposition. His use, or claimed use, of TKY's property was not so open and notorious as to imply a presumption of that fact, and TKY had no knowledge of the adverse claim until after it began logging on a portion of the disputed property in 2022.

Because the trial court properly weighed the competing testimony and evidence, its assessment of credibility cannot be overturned absent clear and convincing evidence to the contrary. Clear and convincing evidence is "evidence in which there is no serious or substantial doubt about the correctness of the conclusions drawn from the evidence." *Hodges v. S.C. Toof & Co.*, 833 S.W.2d 896, 901 n.3 (Tenn.1992). Mr. Blankenship has not provided clear and convincing evidence that this court should disturb the trial court's determinations of witness credibility. Neither Mr. Blankenship's claims of usage nor his alleged usage of the property satisfied the clear and convincing standard. The record of both the February 2023 and August 2023 hearings supports the trial court's conclusion that

Mr. Blankenship did not prove by clear and convincing evidence all the requirements of adverse possession.

## V. CONCLUSION

The judgment of the trial court is affirmed. The case is remanded for further proceedings consistent with this opinion. Costs on appeal are assessed to the appellant, Billy Ray Blankenship.

_____
JOHN W. MCCLARTY, JUDGE